1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

AMAZON.COM, INC., a Delaware
corporation; and YETI COOLERS, LLC, a
Delaware limited liability company,

9

10

Plaintiffs,

11

v.

12

MICHAEL WHITE, an individual; KAREN
WHITE, an individual; collectively d/b/a
Gadsen Flags in USA AKA Cyber Venzz
AKA Cyber Dream AKA PhoneCleaner, and
d/b/a The Cyber Bargain Portal AKA Cloud
Technic;  and DOES 1-10,

13

14

15

Defendants.

16

CASE NO. 2:20-cv-01773-JHC

ORDER

17

**I.**

18

**INTRODUCTION**

19

This matter comes before the Court on Plaintiffs Amazon.com, Inc. and YETI Coolers,

20

LLC's Motion for Default Judgment (the "Motion").  Dkt. # 25.  Defendants Michael White and

21

Karen White, collectively d/b/a Gadsen Flags in USA a/k/a Cyber Venzz a/k/a Cyber Dream

22

a/k/a PhoneCleaner, and d/b/a The Cyber Bargain Portal a/k/a Cloud Technic have not filed a

23

response or otherwise appeared in this action.  Dkt. # 22.  Having reviewed the filings, the Court

24

GRANTS Plaintiffs' Motion.

## II.

### BACKGROUND

From about February to September 2020, Michael and Karen White, collectively d/b/a Gadsen Flags in USA a/k/a Cyber Venzz a/k/a Cyber Dream a/k/a PhoneCleaner, and d/b/a The Cyber Bargain Portal a/k/a Cloud Technic sold counterfeit products bearing five of YETI's registered trademarks on their Amazon storefront.  Dkt. #1, Compl. ¶¶ 5, 30, 35, 39; Ex. A (trademarks).

In April 2020, US Customs and Border Patrol (CBP) contacted YETI saying that in March they had seized a shipment from China of 500 suspected counterfeit cup lids branded with YETI's trademark.  Dkt. # 1, Compl. ¶ 36; Ex. D.  The receiving address associated with the shipment was the same as the one associated with Defendants' Amazon selling accounts.  *Id.*  YETI inspected the lids and confirmed they were counterfeit.  Dkt. # 1, Compl. ¶ 37.  In May, YETI sent a cease-and-desist letter to the address associated with the shipment; YETI received no response.  Dkt. # 1, Compl. ¶¶ 37, 38; Ex. E.

In June, YETI performed a "test purchase" from Amazon selling account "Gadsen Flags in USA" of what was advertised as a "YETI RAMBLER® 20 oz. Tumbler, Stainless Steel, Vacuum Insulated with MagSlider™ Lid."  Dkt. # 1, Compl. ¶ 40.  The selling account shipped a counterfeit product bearing YETI's trademark.  Dkt. # 1, Compl. ¶ 40.  Amazon reviewed the selling account and identified other products likely to be counterfeit because of the number of customer complaints.  Dkt. # 1, Compl. ¶ 41.  Amazon noted that they issued "tens of thousands of dollars in refunds" to customers of that selling account.  Dkt. # 26, Declaration of Alex Calvert ("Calvert Decl.") ¶ 5.

In August, YETI sent another cease-and-desist letter to Michael White, the owner and operator of Gadsen Flags in USA and Cyber Bargain Portal; YETI received no response.  Dkt. #

1, Compl. ¶ 42; Ex F.  Amazon shut down the selling accounts Gadsen Flags in USA and Cyber Bargain Portal because of the violation of its anti-counterfeit policy and user agreement.  Dkt. # 1, Compl. ¶ 45; Ex B (agreement), C (policy); Dkt. # 26, Calvert Decl. ¶ 2.

Plaintiffs sued Defendants in December 2020.  Dkt. #1.  Defendants were properly served.  Dkt. # 10, 11.  Michael White attempted to answer the complaint (Dkt. # 12), but the Court struck the answer as it was unsigned (Dkt. # 15).  Defendants made no further attempts to respond or appear.  Upon Plaintiffs' request (Dkt. # 16), a clerk entered default (Dkt. # 22).  Plaintiffs now move for default judgment.  Dkt. # 25.

### III.

#### ANALYSIS

A.    Default Judgment

After the entry of default, courts have the discretion to enter a default judgment under Federal Rule of Civil Procedure 55(b)(2).  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also* Local Civil Rule (LCR) 55(b).  "With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true," except those related to damages.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  The law disfavors default judgments and courts should decide cases on their merits whenever reasonably possible.  *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016).  When deciding whether to enter a default judgment, courts consider these factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (quoting *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)).

1.        Possibility of prejudice to Plaintiffs

This factor supports default judgment because without one, Plaintiffs will have no remedy for Defendants' actions. *See Crim. Prods., Inc. v. Gunderman*, No. C16-1016-RAJ, 2017 WL 664047, at *2 (W.D. Wash. Feb. 17, 2017) ("Without entry of default judgment, Plaintiff will be prejudiced because it will be left without a proper remedy."). Defendants did not respond to two cease-and-desist letters and have not appeared in this matter. Defendants' actions of selling sub-par counterfeit products using the YETI trademarks on Amazon harm Plaintiffs' reputations and goodwill. *See Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff will likely suffer great prejudice through the loss of sales and diminution of goodwill if default is not entered.").

2.        Merits of Plaintiffs' claims and sufficiency of their complaint

"The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency of the complaint—are often analyzed together." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014). Upon analysis of each claim in the complaint, the Court finds these *Eitel* factors support default judgment.

i.        YETI's trademark infringement claim (Claim One)

YETI bases its trademark infringement claim on 15 U.S.C. § 1114. To establish such a claim, YETI must show that Defendants used

> (1) a reproduction, counterfeit, copy or colorable imitation of plaintiff's registered trademark, (2) without its consent, (3) in commerce, (4) in connection with the sale, offering for sale, distribution or advertising of any goods, (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.

*Amazon.com v. Kurth*, No. 2:18-CV-00353-RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019) (citing 15 U.S.C. § 1114(a)). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the

ORDER - 4

good or service bearing one of the marks." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

The allegations in the complaint, taken as true, establish YETI's trademark infringement claim. Defendants use of counterfeit products is established by CBP's seizure of counterfeit YETI lids and their shipping of a counterfeit mug to YETI during its "test purchase." Dkt. # 1, Compl. ¶¶ 36, 40; Ex. D. The cease-and-desist letters show YETI's lack of consent to use of its trademarks. Dkt. # 1, Compl. ¶¶ 37, 38, 42; Ex. E, F. Defendants sold products in commerce on Amazon. Dkt. #1, Compl. ¶¶ 5, 30, 35, 39. And a reasonably prudent consumer is likely to be confused by products similar to those sold by YETI bearing YETI trademarks—as evidenced by the Amazon customer complaints and refunds. Dkt. #1, Compl. ¶ 41; Dkt. # 26, Calvert Decl. ¶ 2.

  ii.    Plaintiffs' false designation of origin and description claims (Claims Two and Five)

Plaintiffs base their claims of false designation of origin and description on 15 U.S.C. § 1125. To establish such a claim, Plaintiffs must show Defendants "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). Any person who believes they are likely to be damaged by such an act may sue. 15 U.S.C. § 1125(a); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014).

Defendants falsely designated the origin of the counterfeit products they sold on Amazon by using the YETI trademark. Defendants' use of the false designation of origin is likely to cause confusion, as shown by the refunds and customer complaints. *See Coach, Inc. v. Pegasus*

*Theater Shops*, No. C12-1631-MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) ("Because counterfeit marks are, by design, 'inherently confusing, . . . if the plaintiff presents evidence demonstrating an allegedly infringing mark is counterfeit, then a strong likelihood of confusion is established" (quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003))).  Defendants' actions are likely to damage Plaintiffs as they undermine trust in both companies and diminish their reputation and goodwill.

iii.     YETI's unlawful importation of counterfeit products claim (Claim Three)

YETI bases its claim for unlawful importation of counterfeit products on 15 U.S.C. § 1124.  To establish such a claim, it must show that Defendants imported goods bearing YETI's federally registered trademarks.  15 U.S.C. § 1124; *see also Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1122 (C.D. Cal. 2007) ("To prove a violation under Section 42, a trademark owner need only prove that the defendant imported goods bearing copies of its federally registered marks.").  The shipment of counterfeit YETI lids bearing YETI's trademarks from China, which CBP seized, establishes this claim.  Dkt. # 1, Compl. ¶ 36; Ex. A, D.

iv.     YETI's importation of merchandise bearing United States trademark claim (Claim Four)

YETI bases its claim for importation of merchandise bearing United States trademark on 19 U.S.C. § 1526(a).  To establish such a claim, YETI must show Defendant (1) imported into the United States, (2) merchandise of foreign manufacture, (3) bearing a trademark owned by a United States corporation and registered in the Patent and Trademark Office, (4) without written consent from the trademark owner.  19 U.S.C. § 1526(a).  YETI's allegations establish such a claim because Defendants imported into the United States lids bearing YETI's trademark, from China, without YETI's consent.  Dkt. # 1, Compl. ¶¶ 8 (US company), 36 (import); Ex. A (trademarks), D (CBP), E, F (cease and desist).

v.       Plaintiffs' Washington Consumer Protection Act (CPA) claim (Claim Six)

"To prevail on a CPA action, the plaintiff must prove an '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.'" *Klem v. Washington Mut. Bank*, 176 Wash. 2d 771, 782, 295 P.3d 1179 (2013) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531 (1986)); RCW 19.86.020.  "Absent unusual circumstances, the analysis of a CPA claim will follow that of the [federal] trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010).

As the analysis for a CPA claim tracks that for a federal trademark claim—discussed above—and there does not appear to be unusual circumstances dictating a different result, Plaintiffs have established a CPA claim.  Defendants engaged in a deceptive act by selling counterfeit YETI products in commerce.  Selling sub-par counterfeits harms the public interest and injures Plaintiffs' businesses.

3.       Sum of money at stake

"In weighing this factor, courts take into account the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by defendant's conduct.'" *Curtis*, 33 F. Supp. 3d at 1212 (quoting *Landstar Ranger, Inc. v. Parth Enter., Inc.,* 725 F. Supp. 2d 916, 921 (N.D. Cal.2010)).

This factor supports default judgment.  YETI seeks $142,500 in statutory damages. YETI submits evidence that Defendants received about $47,486.47 from their sales of counterfeit YETI products from January to June 2020; the damages sought are roughly that amount trebled.

Dkt. # 26, Calvert Decl. ¶ 3.  The harms YETI experienced are not cabined to lost sales; it also

suffered a loss of reputation and goodwill.  Statutory damages serve not only a compensatory

purpose but also a deterrent purpose.  *See Amazon.com, Inc. v. Huang Tengwei*, No. C18-

1399RSM, 2019 WL 4414957, at *3 (W.D. Wash. Sept. 16, 2019).  The amount sought in

damages is not disproportionate to the harm caused by Defendants' conduct.

       4.       Possibility of a dispute over material facts

     "When default has been entered, courts find that there is no longer the possibility of a

dispute concerning material facts because the court must take the plaintiff's factual allegations as

true."  *Curtis*, 33 F. Supp. 3d at 1212.  "Where a plaintiff 'has supported its claims with ample

evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the

complaint, no factual disputes exist that preclude the entry of default judgment.'"  *Id.*

(quoting *Landstar,* 725 F. Supp. 2d at 922)).  A clerk entered default against Defendants and

Plaintiffs have introduced enough evidence to support their claims.  Despite being notified of this

proceeding, Defendants do not appear to contest those claims and there does not appear from the

record a possibility of dispute over material fact.  *See Crim. Prods., Inc.*, 2017 WL 664047, at *3

("each of the Defendants was personally served or waived service, giving them ample

opportunity to contest the allegations.").  This factor also supports default judgment.

       5.       Excusable neglect

     Because nothing in the record suggests that Defendants' default stemmed from excusable

neglect, this factor supports default judgment.  Defendants were on notice of their potential

liability from the two cease-and-desist letters, Defendants were properly served, and plenty of

time has elapsed since Plaintiffs began this case in December 2020.  *See Microsoft Corp. v.

Lopez*, No. C08-1743-JCC, 2009 WL 959219, at *3 (W.D. Wash. Apr. 7, 2009) ("no evidence of

Defendant's excusable neglect" where defendant was notified by a cease-and-desist letter,

defendant was properly served, and lots of time elapsed since the filing of the case); *Maersk Line v. Golden Harvest Alaska Seafood LLC*, No. C20-1140-JLR-MLP, 2020 WL 6083464, at *4 (W.D. Wash. Sept. 30, 2020), *report and recommendation adopted*, No. C20-1140 JLR, 2020 WL 6077419 (W.D. Wash. Oct. 15, 2020) ("Plaintiff has demonstrated proper service on Defendant, and there is no evidence that Defendant's failure to respond to the complaint is the result of excusable neglect.").

6.    Policy in favor of deciding a case on the merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel,* 782 F.2d at 1472.  The Court recognizes the policy favoring a decision on the merits, but this factor does not foreclose on entry of a default judgment.  *See Kurth*, 2019 WL 3426064, at *4 ("Because Defendant has failed to appear or respond in this action, a decision on the matters appears unlikely.").

Having considered the *Eitel* factors, the Court finds they support entry of a default judgment for Plaintiffs.

B.    Damages for YETI

YETI seeks at least $142,500 in statutory damages for Defendants' trademark violations instead of actual damages.  *See State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720 (9th Cir. 2005) ("Section 1117(c) allows a plaintiff to opt for statutory damages in cases involving the use of a counterfeit mark.").  15 U.S.C. § 1117(c)(2) provides that in cases of "willful" use of a counterfeit mark, courts may award a plaintiff between $1,000 and $2,000,000 in statutory damages per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as is "just."  "Willful trademark infringement occurs when the defendant's actions are 'willfully calculated to exploit the advantage of an established mark.'"  *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015) (quoting *Lindy Pen Co., Inc.*

*v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir.1993)).  In assessing damages for willful trademark violations, courts consider the compensatory, deterrent, and punitive functions of the damages. *Liu*, 489 F. Supp. 2d at 1124; *see also Huang Tengwei*, 2019 WL 4414957, at *3 (considering the goal of compensating the plaintiff for harm, deterring further violations, and punishing the willful conduct when analyzing damages for willful violation of trademarks). Because Defendants have defaulted, all of Plaintiffs' allegations, including allegations of willful conduct are considered true.  *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("The district court entered default and Poof concedes that its default occurred with respect to a complaint that pled wilfulness [sic].  Thus, all factual allegations in the complaint are deemed true, including the allegation of Poof's willful infringement of Andrew's trademarks."); Dkt. # 1, Compl. ¶¶ 50, 59, 73, 80, 81.

YETI alleges that Defendants unlawfully used five of its trademarks, so the range of statutory damages is between $5,000 and $10,000,000.  Dkt. # 1, Compl. ¶ 26; Ex. A.  YETI submitted the declaration of an Amazon Risk Manager who stated that the Amazon sales report show that "Defendants' Selling Accounts made total sales of YETI®-branded products including YETI® Ramblers® and Magslider™ lids in the amount of $47,486.47, exclusive of taxes and shipping costs, for the period between January and July 2020."  Dkt. # 26, Calvert Decl. ¶ 3. YETI argues that the damages it seeks is conservative given that it is well below the statutory maximum of $10,000,000.  YETI further contends that the amount it seeks is reasonable because it is roughly the trebled amount of the Defendants' known sales revenue, and that the amount considers not just compensation but also deterrence.  YETI emphasizes the need for deterrence given Defendants' disregard of its cease-and-desist letters.  The Court agrees with YETI's arguments and awards YETI $142,500 in statutory damages.  *See Microsoft Corp. v. BH Tech, Inc.*, No. 2:16-CV-2664-ODW-RAO, 2016 WL 8732074, at *6 (C.D. Cal. Sept. 2, 2016)

1    ("[plaintiff] asks for a conservative $30,000 per trademark infringement and $15,000 per

2    copyright infringement. . . . The Court finds these sums to be reasonably calculated and thus

3    grants Microsoft's request for statutory damages.").  Defendants shall be jointly and severally

4    liable.  *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 973 (N.D. Cal. 2015)

5    ("'Courts in the Ninth Circuit' have 'held that in patent, trademark, literary property, and

6    copyright infringement cases, any member of the distribution chain' of allegedly infringing

7    products can be 'jointly and severally liable' for the alleged misconduct." (quoting *Unicolors,*

8    *Inc. v. Macy's, Inc.*, No. CV 14–08611–RGK SSX, 2015 WL 1020101, at *4 (C.D. Cal. Mar. 6,

9    2015)) (internal quotation marks omitted)).

10   C.      Permanent injunction

11           Plaintiffs seek to enjoin Defendants from

12           (i) selling products in the Amazon store;
             (ii) selling products to Amazon or any affiliate;
13           (iii) opening or attempting to open any Amazon Selling Accounts;
             (iv) manufacturing, importing, distributing, offering to sell, or selling any product
14           using YETI's brand or trademarks, or which otherwise infringes YETI's
             intellectual property, on any platform or in any medium;
15           (v) assisting, aiding or abetting any other person or business entity in engaging or
             performing any of the activities referred to in subparagraphs (i) through (iv) above
16
     Dkt. # 1, Compl. ¶ 19.

17           "15 U.S.C. § 1116(a) vests the district court with the 'power to grant injunctions

18   according to principles of equity and upon such terms as the court may deem reasonable, to

19   prevent the violation of any right' of the trademark owner."  *Reno Air Racing Ass'n., Inc. v.*

20   *McCord*, 452 F.3d 1126, 1137–38 (9th Cir. 2006).  Granting a permanent injunction is "an act of

21   equitable discretion" and courts should apply "traditional equitable principles" in its analysis.

22   *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Similarly, the CPA allows a party

23   to seek a permanent injunction to prevent further violations.  RCW 19.86.090.

24

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc.*, 547 U.S. at 391.

        1.       Irreparable injury

"[O]nce infringement is shown, irreparable injury is generally presumed in a trademark case." *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012); *see also* 15 U.S.C. § 1116 ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction"). Thus, the Court presumes irreparable injury and does not find evidence rebutting such a presumption. Rather, that Defendants have failed to appear and that Defendants' actions harm Plaintiffs' reputation, reduce goodwill, and result in lost profits for YETI means that Plaintiffs have suffered an irreparable injury. *See Lions Gate Films Inc. v. Saleh*, No. 214CV06033ODWAGR, 2016 WL 6822748, at *6 (C.D. Cal. Mar. 24, 2016) (" Plaintiff would suffer irreparable injury in the absence of a permanent injunction because Defendants' failure to appear suggests that they will continue to infringe on Plaintiff's copyright, which will erode Plaintiff's ability to enforce its exclusive rights."); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief.").

        2.       Adequacy of legal remedies

As Plaintiffs contend, legal remedies, while also appropriate, do not adequately compensate for their injury. As mentioned above, "Harm resulting from . . . lost customer

goodwill . . . is neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief." *Id.* Selling sub-par counterfeits bearing YETI trademarks on Amazon harms Plaintiffs' reputation and goodwill in a way that is hard to quantify. Moreover, Defendants' failure to appear suggests that their infringing behavior may continue. *See Amazon.com Inc. v. Robojap Techs. LLC*, No. C20-694 MJP, 2021 WL 5232130, at *4 (W.D. Wash. Nov. 10, 2021) ("Given Quatic's decision not to continue to appear in this case, there can be no assurances that Quatic will no longer engage in the conduct at issue in this case. This satisfies the Court that monetary damages alone are insufficient."). And absent an injunction, Plaintiffs would need to continue to file new lawsuits to address such behavior. *See Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104–05 (9th Cir. 1994) ("the multiplicity of suits necessarily to be engendered if redress was sought at law, all establish the inadequacy of a legal remedy and the necessity for the intervention of equity." (quoting *Bitterman v. Louisville & Nashville R.R. Co.*, 207 U.S. 205, 225 (1907))).

3.      Balance of hardships

With the modification to the requested injunction discussed below, the balance of hardships supports Plaintiffs. Without an injunction, Defendants could continue to sell counterfeit YETI products on Amazon or elsewhere, which poses a hardship for Plaintiffs. But the injunction Plaintiffs seek is overbroad. *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (an injunction must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiffs, rather than 'to enjoin all possible breaches of the law.'" (quoting *Zepeda v. INS,* 753 F.2d 719, 727 (9th Cir.1983))). Plaintiffs seek in part to enjoin Defendants from "(i) selling products in the Amazon store; (ii) selling products to Amazon or any affiliate; (iii) opening or attempting to open any Amazon Selling Accounts." Items i and ii should be limited to "counterfeit products" and item iii should be stricken. *See Kurth*, 2019 WL 3426064, at *6

1    ("Paragraph (a) of the proposed injunction seeks to enjoin Defendant from 'opening any Amazon

2    Seller Accounts or otherwise selling products on any of Amazon's websites' . . . This request is

3    far too overbroad given the evidence before the Court and does more than remedy the specific

4    harm at issue").  With those modifications, the balance of hardships without an injunction would

5    favor Plaintiffs.  *See T-Mobile USA, Inc.*, 862 F. Supp. 2d at 1133–34 ("the balance of hardships

6    weighs strongly in T–Mobile's favor. . . . Defendant has no legitimate interest in using and

7    selling T–Mobile's proprietary codes.").

8           4.     Public interest

9           Finally, entering a permanent injunction would serve the public interest.  *See Treemo,*

10   *Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014) ("injunctive relief serves

11   the public interest by protecting the rights of trademark holders against infringement and also

12   minimizing consumer confusion."); *Robojap Techs. LLC*, 2021 WL 5232130, at *4 ("an

13   injunction prohibiting Quatic from engaging in further conduct that misleads and defrauds

14   consumers will serve the public interest").

15          Accordingly, the Court concludes that a permanent injunction, as modified above, is

16   appropriate in this case.

17                                              **IV.**

18                                         **CONCLUSION**

19          For the foregoing reasons, the Court GRANTS Plaintiffs' Motion.  Dkt. # 25.  The Court

20   awards YETI $142,500 in statutory damages.  And the Court GRANTS Plaintiffs' request for a

21   permanent injunction, as follows: Defendants are enjoined from (i) selling counterfeit products in

22   the Amazon store; (ii) selling counterfeit products to Amazon or any affiliate;

23   (iii) manufacturing, importing, distributing, offering to sell, or selling any product using YETI's

24   brand or trademarks, or which otherwise infringes YETI's intellectual property, on any platform

or in any medium; (iv) assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iii) above.

Plaintiffs' counsel is directed to serve this order and injunction on Defendants. The Clerk is directed to send uncertified copies of this order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 24th day of May, 2022.

_John H. Chun_
John H. Chun
United States District Judge

ORDER - 15